Good morning, Your Honors. Robert Bunzel on behalf of Vectren Communications Services. The appeal today before you, I think, raises some important issues, not just for my client and City of Alameda, but also for the very many parties, banks, trustees, and participants in the kind of complex financing agreements at issue in this case and the interplay between those complex contracts with their notice provisions for breach and seeking relief in court and the California Government Claims Act. I understand that the court has read the papers. I'm not going to dwell on the facts. I do want to, we have cross appeals in this matter, so I'd like to, for the first portion of my argument for ten minutes, deal with Vectren's appeal from the judgment and reserve five minutes to address the City's appeal after the City speaks, if that works with the court. I'll obviously answer any questions that you raise during my first ten minutes as well. There are four points, I think, at issues in this case that are important to address. The first is the relationship between the various government code sections, starting with Section 900, and the effect of those on the contract in this case and why we believe that that places the contract outside the Government Claims Act and creates a longer statute of limitations. The second issue has to do with whether the contract between the parties constitutes an alternative claims procedure, which, under the government code, would cause the contract claims procedure to be outside of the Act. The third issue has to do with the findings by the jury on statute of limitations and waiver and the decisions of the district court, which we believe inappropriately tendered those issues to the jury in the first place. And fourth, and there isn't a lot of discussion of this in the briefs, if Your Honor see fit to support Vectren's appeal, what would be the scope of the remand to the district court to retry the issues with respect to the breaches found by the jury, that is, that the City of Alameda violated the contract by selling the system out from under Vectren's action? Roberts, you began your argument by saying that there was an important point here of California contract law that would affect other kinds of contracts and complex financial transactions, which has to do with sort of the obligation to declare a breach or try and accommodate the other party and so on. If you were to prevail on that point, why do you need COGSA? Why do you need the CGSA?  Right. Right. If you have a problem of an ongoing breach, if the City of Alameda was in sort of an ongoing breach. Yes. And as you claim, Ben, you haven't waived your right, for example, to object to the sale to Comcast. You don't need a shorter statute of limitations. That's correct. Okay. So your first two points are irrelevant if you continue the argument that you began with. Yes. You have to look at the two claims at issue that we're raising before the Court where the jury found breach but did not award damages. With respect to the sale claim, the issue of the statute of limitations, I believe, is irrelevant. The jury got it wrong and the judge should not have tendered that matter to the jury. Whether it's a two-year statute of limitations from 2006 or a four-year statute of limitations from 2004, there's no way that the evidence could support or that the jury should have been given the issue of the statute of limitations on the sale claim. So you're absolutely correct, Judge Bivey, on that point. On the other claim, however, with respect to the failure to install a voice component, which the evidence showed would have created another one point, I believe, million and a half dollars of damages if that had been done, there is evidence in the record that between 2006 and 2008, when the complaint was filed, that a jury might have concluded that the facts led to an injury. So are you telling me that if you – that if we decided that the CGSA does apply here, that you lose on the voice question? That's correct. Okay. The only way that we can get remanded to the district court to try the voice claim would be finding that the GSA does not apply, and by applying the interplay between sections 930.4, 930.6, and 945.8, you reach, I think, the clear conclusion that you end up with a four-year statute if the GSA does not apply. On the issue of the Government Claims Act provisions here, it's a little complicated with respect to how these statutes interrelate. But the key statutes are 930.2, which gives the governing board here the authority to enter into a contract where the Government Claims Act does not apply, and 930.4, which says that if there is an alternative procedure for claims presentation, that the – that procedure governs exclusive of the Act, so the Act doesn't apply. And then you have to look at 930.6 as to say what statute of limitations would apply. And 930.6 says if the agreement provides – the private agreement provides for both presentation, that is, notice of the claim to the board, and has an obligation of the board to issue a response, then you look to the shorter statute of limitations under 945.6, which is two years, and if not, you're back to 945.8, which says the default is to the applicable statute of limitations as if the governing board or the public entity were a private party. And in page 26 of our opening brief, we cited some legislative history, Your Honors, which was a memorandum of the Law Revision Commission from 1964. And I read it yesterday, and I – you know, it wasn't attached to our brief. It's a little hard to find, and I just want to make sure that if this issue about what statute of limitations would apply if the Act doesn't apply is being considered by the court, that you have a copy of Memorandum 64-102, which is dated November 2, 1964. It is cited in our brief at page 26 as Memorandum 64-104. There was a transposition of a digit there. But it's quite helpful. It shows that the people who wrote this statute, 930.6, passed in 1965, they state in their memorandum at page 70 that the purpose here is to address when the four-year statute of limitations would apply to a private agreement and when a two-year statute of limitations, or there a six-month statute because a personal injury claim would apply. So clearly the intent, and I think the only rational way of looking at these statutes, is that you have a two-year statute – excuse me, a four-year statute if the Act doesn't apply. I also wanted to discuss something in the Arntz case, which is 166 Calab IV at page 288. It's a key case, I think, in this appeal with respect to the Government Claims Act. And it talks about the fact that the private contract must conform to the statutory procedure with respect to the, quote, time for filing suit, unquote. I believe that any fair reading of Arntz, when you look at 945.8, which clearly says that some of these provisions outside of the Code can have the applicable statute, which would be four years for breach of contract, you have to read Arntz that that discussion refers to the whole of the statutory procedure, including 945.8. I want to turn for just a moment to the claims procedure that's in the contract. And it's at the fourth volume of the excerpts of record, pages 461 to 462. If the Government Claims Act applied under this circumstance, this would render meaningless the automatic remedies provisions in Section 9.2. The language here is quite clear. Whenever any event of default, and I'm reading from page 462 of the fourth volume of the ER, shall have happened and be continuing, that is, notice having been given, opportunity to cure having been not availed, and the event of default having ripened into breach, it says VCS, that's my client, shall have the right at its option and without any further demand or notice to, A, declare all principal components of the installment payments immediately due and payable, and to take whatever action at law or equity may be deemed necessary or desirable to collect the installments then due or thereafter to become due. I don't think that's ambiguous at all, Your Honors. To the extent you're looking at Section 9.3, and this was not discussed in the party's brief, at the end of Section 9.3, it says, in order to entitle VCS to exercise any remedy reserved to it in this Article 9, that's the notice and default and enforcement provisions, it shall not be necessary to give any notice other than such notices may be required in this Article 9 or by law. So why, since there's no reference here to the California Act, then why isn't the notice there required by Article 9 or by law? Why isn't that the notice required by the Act? That's exactly the point I was trying to raise, Your Honor, and that's where you public agency, if it wants the Act to apply in addition to a commercial contract to expressly state that so there's no confusion between the parties, or by law, is vague, it doesn't reference the Act, it is not expressed. And Arntz teaches that, I think, very, very clearly. And I think the district court got that wrong. I pointed that out to Judge Yelston, and it was Except that in the Arntz case, you actually had a reference to the code, didn't you? Indeed, there was a reference to the government code as, in the Arntz case, which I think strengthens our position. In the Arntz case, even with a reference to the government, you know, government code claim notice, that wasn't enough. That was not an express requirement under the contract to also make a Government Claims Act application to the city. That was not enough. In our case, we don't even have a reference to the Government Claims Act. We have or by law. It's not enough. And the Arntz case teaches, and I think it's clear California law at this point, that it has to be expressed. So your view is that the contract governs unless it says that the statute governs? It's exactly what the Arntz case says. What provision? Where in the Arntz case does it say that? Page 266. I believe it's page 266. I don't think so. It's 266 Calab, third page. Hold on a minute. When I get back up, I'll have that cited. My understanding was that the statute governs, was the default provision, unless the parties contracted around it. And that would be consistent with the way that we ordinarily interpret statutes of this kind. So if you're telling me there's something different, that's a complete flipping of the way that we ordinarily deal with these things. It is. This is the California Government Claims Act, not the Federal Court Claims Act. Right. Go ahead and tell me which page of that opinion that says that. It's the end of the Arntz opinion. It says that the Arntz opinion rejects the idea that you look to relative comprehensiveness of the contractual claims provision, whether it is or is not, you know, a full provision. Forget that. And instead, they adopt a bright-line test that if the city or the state or the agency wants to also have the claim processed through the Government Claims Act, it must expressly state that in the contract. That's what avoids confusion. Okay. But you still haven't given me a page reference in the case. I need to find that for you, Your Honor. Okay. When I sit down, I'll find it. Do you have it? 291, Your Honor. It's right in the conclusion of the case. I just think it's abundantly clear. And in this case, it makes the most sense, which is we have contracts here. They fill almost an entire volume of the record before this Court. They're interrelated. They're complex. They involve bank trustees, contracting parties, corporations, several public agencies. There's no mention of this act. There is instead a very precise mechanism for what one has to do in order to bring a claim for default before the agency and then have every right to sue to enforce those rights. To cobble on the Claims Act here would be inconsistent with California law and do a grave injustice here, at least to my client. And I think to other contracting parties who are relying on the government to enter into these contracts and if they want to put this other procedure in place, they can do so. And ours says with one single sentence is all you have to do. Tell the contracting party this is a $6 million contract that supported a $30 million bond refinance. Put it in the contract. It's not so hard. There were lawyers involved for all these parties. They didn't do it. They didn't discuss the Claims Act. And it's being used in this case as a sword rather than a shield. I did want to talk just for a moment about remand. Counsel, you've used up all of your time. You're over time and haven't saved any time for your rebuttal. I'm going to allow you a minute, but you have used up all your time that you were going to use to respond to them. I'll sit down then. May it please the Court, my name is Gregory Aker. I am the counsel here for the City of Alameda. I'd like to address the City's appeal first and then, with the Court's permission, turn to responding to Veterans' appeal. Alameda raises three arguments on appeal. First, that the accounting claim, these are the single claim on which Veterans prevailed in this case, is barred as a matter of law because it failed to present a pre-litigation claim in accordance with the California Government Claims Act. I would point out here, though, that with respect to that accounting claim, Veteran did not comply either with the California Government Claims Act, nor did it comply with the notice of default provision that Mr. Bunzel was just referring to under the contract. So on that claim, they didn't comply with either procedure because they raised their accounting claims by their expert witness report during the trial of this action just a few months before the actual trial. So whichever procedure applies, they didn't comply as to their accounting claim. The second argument we raise is that, at a minimum, if there were issues of fact regarding Government Claims Act compliance, they should have, under the Seventh Amendment and the many Supreme Court and Federal cases interpreting that, been submitted to the jury for determination. The District Court did not have authority to determine those on its own. And the third issue is that the District Court erred by not instructing the jury that Veteran was bound by the admissions of its complaint that Alameda was required to compute these net telecom revenues in accordance with generally accepted accounting principles. And the theory on which Veteran prevailed at trial was that by following GAP, Alameda breached the contract. Alameda was what you swallowed your last word. Okay. By following generally accepted accounting principles, Alameda breached the contract. That was the theory that Veteran presented at trial, 100 percent contrary to the admissions contained in their complaint. I think the rules on Claims Act compliance in California are well established. It has to be a written claim. You have to submit it before litigation, not afterwards. You have to provide the public entity enough facts so that they can investigate the claim, evaluate it, and possibly settle it without litigation. The facts stated in a claim, if a claim is presented, have to then correspond to the facts that are in the complaint. You can't say one thing in your claim and then say something else in your complaint. And importantly to the jury trial issue is that compliance with the Government of Claims Act is an element of your claim. It's not a defense. It's an element of the plaintiff's claim for breach of contract in California. The only writing that comes close to a claim, I think in this case, is their letter of August 2007, which I'm sure the Court is familiar with. That letter is on its face, limited to operational issues, and you can read that letter ten times and you will never see any reference to a Veteran's accounting claims. The words accounting doesn't work, accounting doesn't appear, depreciation, the specific issues that were raised at trial do not appear. There's no mention of the contract provisions regarding accounting. And I think this is the analytic key here, is that if you look at that letter and ask yourself, reading that letter would I have any reason to suspect and to investigate how we're accounting for net telecom barriers? Not staffing, rates, all the operational things, but how would I ever know, and even if I did know, how would I know which claims to investigate? I think just on the face of the letter, you can reach the conclusion fairly easily that it's not there. And I, during the trial, asked Veterans President, Ms. Witte, I asked her, you would agree with me, I believe, that although this letter talks about the rate covenant, it talks about the performance covenant, nowhere in that letter does it mention anything about these accounting issues that Veteran raised. Is that right? Answer, that's correct. Okay, and these accounting issues have really surfaced during the course of the litigation. Isn't that right? She said, that's correct. So we have Veteran's own witnesses, in addition to the terms of the letter itself, saying, yeah, we didn't raise those issues until later. I've referred in our briefs to the Stockett test, the California Supreme Court, which talks about, you know, there has to be the same people and the same times involved between the claim and the complaint to satisfy the Claims Act. The accounting claims involve a whole different Department of Alameda, the Finance Department. The rates and staffing, the other claims they raise, the operational, involve completely separate departments and actions that were taken at different times. Both sides have cited cases going one way or the other on this, and sometimes they're hard to reconcile. But where certain facts are stated in a claim, and then you look at the complaint, is it the same? Are they adding things that they shouldn't have added? But I think you can look at cases, all those cases on both sides, and fairly readily reach the conclusion, this case is nothing like that, because the letter is silent. This is not a case where the letter mentions something about accounting but is not specific, or it mentions certain accounting practices and then attempts to add some later on. It doesn't say anything about it. And the cases, for example, the Blair case, that Veteran sites, truck accident, collided with a tree on an icy highway. They tried to add some additional allegations later on. It was a single event at a single place in time that the court concluded, well, of course, if you evaluate, investigate this claim, it's going to lead you to these other possible causes of the accident. Here we've got events that span an eight-year period during the course of the operation of this telecom system that Alameda couldn't possibly investigate unless Veteran stated them specifically. If there were any doubt about whether this letter complies as to these accounting issues, I think Veteran's case is even further weakened by the DeCampley-Mintz, the recent Supreme Court case we cited to the court, which specifically states, although it directly addresses the recipients of a claim, it goes beyond that to say that the intent of the Claims Act is to limit government liability to, quote, rigidly delineated circumstances and notes the public policies behind a strict application of the claims presentation requirement. Becca, before you sit down, they're going to come to rebuts, so I wish you'd state specifically what you think this Court's ruling should be on this record. Sure. You don't have to do it now. Okay. Well, I'd be happy to do it, actually. On Alameda's appeal, the Court should look at that letter and rule as a matter of law that the accounting claims that they prevailed on at trial were not raised, and therefore judgments should be entered in favor of Alameda on those claims. And sort of the side disposition to that is if the Court feels that maybe there are some questions of fact lurking there, it should be remanded for trial in front of a jury and not for determination by the Court. Would you turn to the waiver question on the sale to Comcast? Sure. Veterans' appeal, I think, can be disposed of by two conclusions. The first is the waiver. They have two claims, the sale claim and the voice claim. On the sale claim, this Court should look at the record and determine is there substantial evidence in the record of waiver. What's the evidence for waiver? The evidence of waiver is that, first of all, a veteran had knowledge of the plans to sell the system. It encouraged a veteran to sell the system. It said, we want you to sell the system. That was the testimony of Ms. Witte and Mr. Chapman. It assisted Alameda. It referred it to a broker, and it happened to be the broker, Waller, who actually helped Alameda to sell the system. It threatened to force Alameda to sell the system. When Alameda then started getting close to actually selling the system, veterans started equivocating about whether it consented or not. And then, finally, at three days before the actual sale, veterans said, oh, we object to your selling the system. Although they were pretty clear in their letters that they weren't waiving anything, that they had the right to object. They threatened litigation, said, look, we're willing to work with you before we get to litigation, but we have a right here that you have to get our consent before you can sell this system. Now, the fact that you referred somebody to an investment banker who may be able to facilitate the sale doesn't mean that you have waived your right to object. You know, Alameda can't go and sell it to the city manager's brother-in-law for $1 just because a veteran was aware that you might be selling it to somebody. Yes. Well, I'll point out a couple things here. Number one, the letters in which veteran objected to the sale or said we have a right to consent or whatever, they happened in 2008 before ñ I mean, this was a long course of conduct, starting in 2006, continuing into 2007. And then in 2008, as Alameda hires Waller and gets the sale in motion, then veteran ñ that's when you see these letters. Were the veteran advised and kept ñ were they kept apprised by the city of all the developments? They were in February of 2008, which was, I don't know what, nine months before the sale. They received a confidential information memorandum on the sale from Waller, the broker. So, yes, they were kept apprised. Now, what did he ever say? You know, we don't think you ñ you know, thank you so much for all of the assistance that you've given us. We deem this to be your consent unless you let us know otherwise. Was it a straightforward thing for the city to have done since there's a contractual right for veteran to object? Did the city make any reference at all to veteran's right to consent or object to the sale? Any correspondence? No. I do ñ So all we have, then, is one side. We don't have anything from the city referring to their understanding that veteran's on board with the sale or the veteran has waived its right to object or advising them that they're doing it unless veteran says otherwise. And we do have a lot of correspondence from veteran saying, wait a minute, we've got a right to consent here before you can do that. And we want to let you know that because we're hoping to avoid litigation here. Yeah. Again, I think that happened late in the game. But we do have the testimony from veteran's witnesses that they told Alameda, this is in 2006, that they wanted Alameda to sell the system. They were in favor of selling the system. Again, that doesn't mean that you can just sell it to anybody you want under any terms that you want. It doesn't mean that they're waiving their right to consent or, in effect, to object. Just because they're saying, hey, selling this thing might be a good idea doesn't mean you can sell it to anybody on any terms. As a matter of fact, veteran, their encouragement of a sale was unqualified. They didn't say, we want you to sell this system, but only if you get a certain price or you sell it to a certain person. Their encouragement was unqualified. And I think the jury was entitled to look at that and say, okay, by the end of 2007, veteran had waived its right to enforce this provision of the contract regarding sale. And that waiver was complete. Once you waive a right, you can't unwaive it. A waiver is permanent. This, I take it this waiver issue was presented to the jury with instructions. Was there any objection to the instructions on waiver that were given to the jury? No, there weren't. And, in fact, I would point out that the instruction that was given to the jury on waiver was proposed by veteran and accepted by the Court virtually unchanged. It may have been a word or two, but it was their instruction. And they're now claiming on appeal that there should have been this element of a reliance in that instruction, which, first of all, it's not the law. If you look at the Waller case, California Supreme Court, that's not an element of waiver. That's a stopple, not waiver. But it was their instruction. I would have, I think, more difficulty with this if it were a decision made by the Court with findings of fact. But here, it's hard to know what was going on in the minds of the jurors. But there's no objection to the – there's no objection to the instruction. Was there any objection made at any time that there's insufficient facts for the jury to make the decision? Veteran did make a Rule 50a motion on waiver, which the Court rejected. And – but that issue went to the jury with veteran's instruction on waiver, and the jury made findings. So, again, the question here is, is there any substantial evidence? And I think this was – The jury doesn't make findings. The jury gives you the result. Yes. And that's why we give so much deference to the jurors, because we don't want to ask them to make findings. Correct. And I think that's what was motivating the district court to deny the post-trial motions. She found, you know, although you could reach another conclusion, there was substantial evidence in the record from which the jury could have concluded. That's what I was getting to me as I read about it. It seemed to me this was thin, but it's not too thin for a jury to decide. Yeah. And the jury could have concluded by the end of 2007 because of veteran's conduct. And, by the way, it was not just implied. It was expressed. They were saying, we want you to sell the system. Wait. You're telling me that by the end of 2007, the jury could have concluded that by the end of 2007, the veteran had waived its right? Correct. Now, what do we do with the letters of April 30th, 2008, June 23rd, 2008? Well, that's my point, that once you waive a right, you can't then unwaive it or you can't then say, well – This is a consistent course of conduct. I'm really surprised at the argument. Well, the consistent course of conduct, I would say, if there was a consistent course of conduct against the sale, would have been in 2008 and not in 2006 and 2007. So I think the jury was entitled, reasonably entitled, to conclude that veteran, by its words and actions, waived this provision of the contract. And once that happens, once the waiver is complete, you can't then say, well, we didn't really mean that or we really meant something else. We meant only of certain terms. So I think, as the district court concluded, there is substantial evidence to the record. Other people could reach a different conclusion based on that evidence, But, you know, we need to give deference to the jury's finding on that issue. Turning to another question, assuming that the Government Claims Act does not apply, would we have to remand the issue of whether the Plaintiff's Voice Claim Act is barred by the 4-year statute of limitations? You would have to remand it. And here's the reason, because the jury, the verdict form they were given, did not ask them to specify a date for accrual. It just said, do you find that the claim had accrued by August 2006? And they said, yes, it was barred. So even if the 4-year statute applies, you still need to have a jury trial address the issue. Okay, well, did the voice claim accrue before the 4 years, or did it accrue after? So that would also need to be decided. I'd like to address the You're well over your time, counsel, but here's what, if Judge Wallace and Judge Ferris don't have objections, here's what I would like to do. I would like you to go ahead and address at least the CGSA question, and I would give you about 2 minutes to do so. Thank you. I'm going to give opposing counsel additional time then to respond, both by way of rebuttal, and that will give you you'll have to use whatever time, counsel, you've got to address the accounting question. And then you will have a minute to respond on the accounting question only, because that's the cross appeal. Thank you. Are we understood on that? Yes. Thank you. I'll try to get through Arntz as quickly as I can. It's not really Arntz. I don't think Arntz applies here. I think there's a basic misunderstanding of what the district court did here. The question for the district court, and you see this at the outset of the case in her order denying the motion to dismiss. She looked at this contract default provision. I call it a boilerplate default provision. And the question for her was, was this a contractual claims procedure under Section 930.2 of the Government Code, which the Government Code says you can do it, or was it not a claims procedure? In the Arntz case, there was no dispute that it was a claims procedure. It was very detailed. It was called claims procedure, and it referred to the Government Code. Here, this is nothing more than a garden variety default provision that doesn't mention the Government Code. And the court looked at it and said, it doesn't say claim in here. It doesn't say claim. The word claim doesn't even appear. Is this a claims procedure? So we don't even get to the Arntz analysis until we first establish the parties intended to establish this contractual claims procedure. With both sides' agreement, she heard evidence on that. She read the contract. She heard the testimony of witnesses. And she made a finding of fact that the parties did not intend this to be a claims procedure under Section 930.2. So you don't even get to Arntz, because, as I said, Arntz, you know, assumed a claims procedure applied. And if you compare the claims procedure there, which is multiple steps, nine separate steps, and it says claims, it's nothing like the procedure here. And I would submit that what you're arguing is that there wasn't enough in there, that wasn't Section 9 enough. They say it is. You say, no, it's got to be more extensive. Correct. And I know I don't. Why? Why? If it just asks for a claims procedure, anyone, it seems to me, a short woman, a long woman, a medium size would do. What's the case that says it has to be how long? And then how do we decide how long a string is? Which is your question you're asking, it seems to me, is we have to decide how long it has to be. Yeah. There's no ---- I can't cite a case for you that establishes that. But I would say two things. Number one, in the Ahrens case, they refer to the legislative history behind the Claims Act in this Section 930.2, and it says that the parties are free to place special claims provisions in their contracts. So it's something different than the ordinary procedure. If this contract was a claims procedure, then I would submit that virtually every contract would have a claims procedure under Section 930.2, which I don't think was the intent. Also, Section 930.2 talks to three things. It says presentation, consideration, and payment of claims. That's another thing you can use as a guide, I think, here. And this, at best, only is presentation. What this says is you notify us of what you think is a default. If we don't do anything in 30 days, you can sue us. That's it. So that, I mean, I don't think a claim even arises until there's notice and a failure to cure under that provision. But even if there is, there's nothing about the consideration of the claim and the payment of the claim. So under either of those standards, the legislative history and I think ---- But the primary problem that you pointed out, pointed out properly, is that you have to get notice. It certainly provides for that. Correct. Section 9 does. Correct. What you do with the notice is what you're suggesting. It had to be in there before the Claims Act is out. Correct. Okay. Actually, I think this contract under ---- let me cite this for you. Section 930.6 of the Government Claims Act says if the contract requires a presentation of a claim and a response before litigation is filed, then the Claims Act statute of limitations still applies. And this contract, and you can look throughout Vectran's brief where they talk about this claims procedure, they constantly use the word must. Vectran must do this, must do this before filing a lawsuit. So I would submit that under Section 930.6, we get to the same place, because this contract did require the presentation of a claim and some kind of response, even if the response was a failure to respond, before litigation could be commenced. I think we understand the argument. I'm going to allow you one minute on rebuttal on the accounting question. Sure. Okay. Thank you. Let's put 5 minutes on the clock here, and I think that will just about equalize the time. Thank you, Your Honor. The first point that Mr. Aker, my able opponent, raised with respect to compliance with the contract, he said Vectran didn't comply with the contractual provisions. That's not appealed by Alameda. That's number one. He said there was no reason to investigate the accounting issues, and I'm going to get to that in a moment. The August 29, 2000 letter, 2007 letter says you've breached the contract. You must now pay us the net 2002 Series A revenues. You have to calculate them to do that. You have to go through an accounting exercise. It's a complex accounting exercise. It's interwoven with the claim. You have to calculate net revenues in order to pay any damages. And when we said you must pay us all of the net revenues that were then due and that will become due, which is what the August 29 letter says, if you don't hear the defaults, we're asking for the net revenues, the net Series 2002 A revenues calculated by the agreement. It's an accounting exercise. They held the accounting records. We asked for the accounting records after we noticed them with breach. We said in letters in January and letters in June, give us the accounting records so we can evaluate the amounts. We had a settlement meeting with these people, with Mr. Ager's partner, in January of 2008, which the record reflects that we discussed the accounting issues. We asked for a tolling agreement. And the policy of this act is to allow investigation and settlement efforts. We did that. They didn't. They said no tolling agreement. And then they used this Government Claims Act as a sword rather than a shield. I just don't. I think it's cynical, Your Honor, what they're doing. So I've talked about the accounting issues in advance. There was no evidence at trial that it was a whole different department that the accounting issues dealt with. It was the same witnesses at trial on the accounting issues and the operational issues, the general manager of the system. I want to talk about remand, excuse me, about waiver for a moment. What Mr. Ager said was that the California law does not require detrimental reliance for implied waiver. And the law is to the contrary. The Apalera case definitely says that. And I think the reason for that is to avoid this situation where someone says some stray comment, such as I can introduce you to an investment banker several years ago, might be construed as a waiver of a contract right at some later date. We're talking about a jury determination now, right? Yes, we're talking about a jury determination. Under jury instructions with which you do not disagree. Your Honor, let me talk about the jury instructions for just a moment. It's a standard jury instruction. I understand. I just said there was no objection made for the jury instruction. You presented it. No, there is absolutely an objection. We made a motion in limine, Your Honor, that said that the jury should not hear the issues of waiver or the statute of limitations. Oh, okay. I got your point. I got your point. We put on the instructions that these were the subject of pending motions in limine, but here's the form instruction anyway if we lose, Your Honor. Okay. I got you. And then, after all of the evidence, I made a Rule 50A motion citing all of the evidence that was insufficient for waiver to go to the jury. That was denied. I could do no more than that as a trial lawyer to preserve that issue, Your Honor. Did the jury have to make this finding by clearing convincing evidence? It absolutely did, Your Honor. Clearing convincing evidence, no express waiver, so you're left with implied waiver. Detrimental reliance is required. I wrote those letters in 2008. We could not, Judge Bivey, determine what Veterans' position was other than to object that you need our consent because they would not show us what the deal terms were. Well, assuming it could go to the jury, assuming that the jury instructions are valid, how can we say that there was insufficient evidence for the jury to find a waiver? Because there wasn't, Your Honor, because the general manager of Alameda testified expressly that Vector did not consent. There was no evidence put on by Alameda, it's their affirmative defense, by clearing convincing evidence that they detrimentally relied. You mean there's no evidence of waiver in the record? There's no evidence of express waiver, and the evidence of implied waiver does not meet by any standard, let alone clear and convincing evidence, the implied waiver test under Appalera and California law. Assuming that it was okay to turn it over to the jury. It's pretty tough to say there was insufficient evidence for the jury to make the finding, especially when you make the motion afterwards and the district court turns you down. You're saying that was error. She should have taken, at that time, should have taken the steps. That is the critical part of our appeal. So that's where we have to start, is whether that was erroneous that she failed to take it away. And, you know, Judge Ilston tried. This is a difficult case. These are complex contracts. I commend her for a lot of the rulings she made in this case. She's good. She's good. This was an error. And we brought to the Court's attention that you have to look at the dichotomy between express waiver and implied waiver. And she didn't do that. And she lists some evidence that just doesn't reach the level of express waiver and clearly not implied waiver on any possible way to do it. With respect to Judge Wallace, your point that is the Court supposed to determine whether the claims procedure in the private contract is, quote, enough, unquote, which you asked Mr. Aker, how long a string should it be. In our view, all that you need to have is notice of default and the right to sue. Here it has the right to cure. It has all these provisions under two pages of Article IX. It clearly provides the notice and the steps that are taken in order to both make the claim and to seek remedy on it. And the answer with respect to how long the string should be is, again, answered in the Arntz case. Arntz says we are rejecting. I know they didn't use the word reject, but they fail to adopt and they look at whether they should look at a test of relative comprehensiveness, and they say no. Not relative comprehensiveness. No, a bright line test. Ask the public entity and put it in the contract. That's so easy to do. Then you don't have this effort at injustice that's being forced on my client today. Thank you. Thank you, counsel. Mr. Aker? Thank you. I don't know that I have all that much more to add on the accounting claims, because I think all you need to do is read that letter, and you can conclude, just as any reasonable reader can conclude, that there's no mention of the accounting claims in there, and there had to be. And, again, even if the Government Claims Act did not apply, there's no evidence in this case that Vectran complied with the contractual claims procedure either. So they're doubly out on their accounting claims. I'd just like to briefly address the points on waiver that Mr. Bunzel made. Well, I'm afraid that sort of under the rules, you can't do that because this is not your cross appeal. This is your rebuttal on cross appeal. I understand. You're limited to the question of accounting. If the Court had any more questions about waiver, I'd be happy to answer them. I'm sure we'll have lots more questions, but they won't occur to us until next week. Thank you. Thank you very much. We thank counsel for the argument. It was the case is a difficult one, and it was well-briefed and well-argued. Well done. Thank you very much. It was very helpful. Excellent. And with that, the Court completes the calendar for the week. We stand adjourned. All rise.
judges: Wallace, Farris, Bybee